OPINION OF THE COURT
Ralph T. Gazzillo, J.
By notice of motion, the defendant has made an application *266 which seeks to permit him to withdraw his previously entered plea and dismiss the indictment or, in the alternative, delay the sentencing proceedings until completion of “the pending federal investigations in order to allow the substantial assistance he has provided law enforcement authorities to bear further fruit, which the court, in turn, can use in determining an appropriate disposition.” The People have strenuously opposed the motion. Based upon the papers submitted, the application is decided as follows:
The relevant history of this matter begins with the instant indictment and its charges, specifically, nine counts of criminal possession of a forged instrument, second degree; three counts of grand larceny, third degree; three counts of attempted grand larceny, second degree; three counts of attempted grand larceny, third degree; and one count of conspiracy, fourth degree. After a series of conferences and negotiations, on June 3, 1999, the defendant executed a “Cooperation Agreement” with the Suffolk County District Attorney. Thereafter, specifically on July 19, 1999, the defendant withdrew his previously entered pleas of “not guilty” and entered pleas of “guilty” to four counts of the indictment, viz., counts one and four, criminal possession of a forged instrument, second degree, and counts two and three, grand larceny, third degree. The pleas were in exchange for the court’s conditional promise of a “capped” sentence, specifically an indeterminate period of incarceration in which the minimum would be three years, the maximum six years. In addition to the usual conditions,[1] the plea anticipated a reduction from that cap after the defendant’s satisfactory cooperation with the prosecutor (specifically, as noted by the prosecutor during the plea colloquy, “an extremely significant series of cases or case in order for that to happen”).
As evidenced by the allegations contained within the instant application’s moving papers, it appears that both before and after the “Cooperation Agreement” the defendant did in some fashion assist various Federal, State, county and New York City law enforcement agencies. With respect to the extent and facts of that assistance and various investigations, however, the moving papers of the prosecution and defense find little agreement. Indeed, the portraits submitted by both sides are far from harmonious, with the defense contending that the de *267 fendant rendered myriad, dangerous,' and extremely valuable assistance while the prosecutibn essentially dismissed the efforts as de minimis. Moreover, and above and beyond the prosecution’s dissatisfaction with the extent of cooperation, they point to an article of the “Cooperation Agreement” which provides that the defendant abide by his conditions of parole; juxtaposed to that is their allegation that he has since been violated. Additionally, the prosecution points to the defendant’s recent arrest in New Jersey for a series of unrelated but serious crimes. Upon that foundation, the prosecution has, therefore, rejected the defendant’s further participation in any cooperation and has revoked the agreement.
In a subsequent response, the defense vigorously advances the worth and extent of the defendant’s cooperation. As to the prosecution’s allegations of the parole violation, the defense further alleges that the parole violation was, for lack of a better word, improperly motivated and, further, that the defendant’s parole officer refused requests by the various law enforcement agencies’ investigators for cooperation.[2] Moreover, the defense further contends that the impact of a parole violation on the “Cooperation Agreement” was the subject of an oral agreement between the prosecution and the defendant’s prior counsel. As to the new arrest, however, the defense has not responded.
First and foremost, the court notes that it is not typically inclined to consider the sincerity or the worth of any defendant’s cooperation as the sine qua non when determining an appropriate sentence. Moreover, in any given case where cooperation was among the major factors in the sentencing equation, the prosecution’s determination of the value — or worthlessness — of any such assistance is not to be lightly dismissed. In the case at bar, that issue is clearly ripe for consideration; indeed, his cooperation was perhaps the centerpiece of plea negotiations with the prosecution. That being so, the defendant’s essential due process rights demand that he be afforded a fair and even-handed consideration of his agreement so as to reasonably assure that he receive what is reasonable under the circumstances. (See, e.g., United States v Calabrese, 645 F2d 1379 [10th Cir 1981].) Indeed, where a prosecutor determines that a defendant’s contracted-for cooperation is unsatisfactory, that determination — as with other exercises of prosecutorial discretion — may not be reached *268 dishonestly or in bad faith. (United States v Khan, 920 F2d 1100 [2d Cir 1990].) Simultanéously, however, and while the prosecution has the initial burden of establishing a breach of the agreement, the defense must show — by sufficient evidentiary basis — the lack of support for the alleged breach (United States v Calabrese, supra) or, as stated otherwise (United States v Khan, supra), bad faith sufficient to trigger a hearing. In the instant matter, however, the latter has not been provided.
It should also be noted, however, that under the facts of this case that failure does not end the analysis. Indeed, even if, arguendo, there is some merit to the defendant’s contentions, it appears that there are at least two other considerations which should also enter the analysis, viz., the defendant has — at least allegedly — violated his parole and thereby violated the “Cooperation Agreement.” Secondarily, he has — again allegedly — violated certain specific terms of his plea agreement with this court[3] in that he has been arrested between the time of the plea and sentence.
As to the first consideration, the alleged violation of parole, the defense’s mere, naked allegations that it was improperly motivated are initially issues for another tribunal. In the absence of any evidence to support his claim, the violation is deemed established and an appropriate predicate for the prosecution’s claim of breach. This result is not disturbed by any “off-the-record” agreements between the attorneys. (Cf., People v Lozovsky, 267 AD2d 774 [3d Dept]; People v Anonymous; 262 AD2d 717 [2d Dept], lv denied 93 NY2d 1013 [1999] [alleged promises which are not contained within plea colloquy are unenforceable].)
As to the second consideration — the new arrest — that raises another issue totally independent of the parties’ agreement. Indeed, and as noted, the court — and not the parties — inserted a condition into the plea allocution that between the time of the plea and sentence the defendant not be arrested.[4] In the event of any such arrest, the minutes clearly reflect the *269 undersigned’s admonition that any appropriate sentence — even the maximum if appropriate — could be imposed.
There is no denial of the prosecution’s allegations of the New Jersey arrest in the defense’s response, much less a claim of innocence; indeed, there has been no mention of it in the defense’s papers. In the absence of a factual dispute as to the legitimate basis for the arrest (see, People v Outley, 80 NY2d 702 [1993]), it is deemed established, the court is thereby released from its promise, and the sentencing is to proceed accordingly.

. Specifically, that he cooperate with the Probation Department, appear on the sentence date or any date adjourned for the purpose of his sentencing, and — as amplified below — not be rearrested.

. Parenthetically, the court finds this somewhat atypical.

. See, n 1, supra.

. The undersigned’s preamble to that condition specifically warned the defendant that “[a]dditionally, above and beyond what we discussed already (his cooperation’s impact upon his sentence) the promise to sentence [him] in the manner I indicated also depends largely upon [him].” (Plea minutes, at 12 [emphasis added].) Immediately thereafter he was advised of that condition, viz., “Between [the plea and the day he was to be sentenced] if [he] * * * so much as even [got] arrested, I will not be bound by my promise. What that means is if [he] * * * [got] arrested, number one, I will not be *269 bound by my promise. Number two, I will not allow [him] to withdraw [his] plea. And number three, I will sentence [him] to any appropriate sentence, including, if it’s appropriate, the maximum allowed under the law.”